RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0081P (6th Cir.)
File Name: 02a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

RHONDA FITCH,
*Defendant-Appellant.*

Nos. 00-6223/
6224/6225/6226

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 99-20081; 99-20213; 99-20297—Jon Phipps McCalla,
District Judge.

Argued: October 25, 2001

Decided and Filed: March 8, 2002

Before: JONES and CLAY, Circuit Judges; DOWD,
District Judge.

---

**COUNSEL**

**ARGUED:** Robert C. Brooks, Memphis, Tennessee, for
Appellant. Paul M. O'Brien, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for
the Northern District of Ohio, sitting by designation.

1

**ON BRIEF:**    Paula Skahan, Memphis, Tennessee, for Appellant.    Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

————————————

## OPINION

————————————

NATHANIEL R. JONES, Circuit Judge.    Defendant-appellant Rhonda D. Fitch appeals from the sentence of the district court which committed her to 121 months imprisonment upon her guilty plea to various charges arising out of her participation in an illegal drug-trafficking and money laundering scheme.    Fitch alleges that the terms of her plea agreement precluded the government's recommendation that she receive a four-level sentence enhancement for her role in the offense under Sentencing Guidelines § 3B1.1. Fitch also contends that she was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).    For reasons we shall discuss, we vacate the defendant's sentence and remand for resentencing.

## I. BACKGROUND

On April 29, 1999, a federal grand jury returned a superseding indictment charging Fitch with conspiracy to possess with intent to distribute marijuana and cocaine, aiding and abetting the possession of marijuana with intent to distribute, and attempting to possess marijuana with intent to distribute.    Fitch was arraigned on May 6, and entered a plea of not guilty. On September 10, 1999, Fitch was also charged by Information with conspiracy to commit money laundering. To this charge, she pleaded guilty.    Fitch also changed her plea to guilty as to the charges in the indictment.    On that same day, Fitch and the government also entered into a written plea agreement.

Paragraph two of the agreement provided that the government would agree to recommend that "the defendant's

can be said to be part of the inducement or consideration, such promises must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).    Not only did the government fail to recommend that the defendant's base offense level not be increased by her leadership role, it vigorously advocated for such an increase.    Thus, the district court erred in concluding that the government did not breach the plea agreement.

Fitch also argues that the district court increased her base offense level in light of her leadership role in violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000).    This argument is without merit.    In *Apprendi*, the Supreme Court held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.    *Apprendi*, 530 U.S. at 490.    We have held that *Apprendi* is not triggered where a defendant is sentenced to a term of imprisonment within the statutory maximum prescribed.    *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000).    Fitch cannot obtain any benefit under *Apprendi* because the statutes under which she was sentenced authorized the imposition of a sentence between 5 and 40 years.    21 U.S.C. § 841(b)(1)(B)(vii).    Fitch was sentenced to a term of 121 months, which is not above the prescribed statutory maximum of 40 years.    Thus, *Apprendi* is not implicated.

## III. CONCLUSION

We must therefore vacate the defendant's sentence and remand for resentencing before a different district court judge. *See Santobello, 404 U.S. at 263*; *see also United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000) ("[W]e are required to . . . remand for resentencing before a different judge . . . . We emphasize that this is in no sense to question the fairness of the sentencing judge . . . . We remand to a different judge for resentencing because the case law requires us to do so.    We intend no criticism of the district judge by this action, and none should be inferred.").

starting point in the sentencing analysis. A defendant's
leadership role is an adjustment to the base offense level,
allowable pursuant to U.S.S.G. § 3B1.1(a). The base offense
level therefore can be increased by the specific offense
characteristics in Chapter Two and/or adjustments in Chapter
Three. The sentencing guidelines define all of these factors
as "relevant conduct." Therefore, we conclude that it was
eminently reasonable for Fitch to believe that when the
government agreed to recommend that no other "relevant
conduct" be used to increase her base offense level, the
government foreclosed any further opportunity to increase her
sentence by means of the leadership role enhancement under
§ 3B1.1(a).

Ambiguities in a plea agreement must be construed against
the government. *United States v. Randolph*, 230 F.3d 243,
248 (6th Cir. 2000). In *United States v. Johnson*, 979 F.2d
396 (6th Cir. 1992), we held that "[b]oth constitutional and
supervisory concerns require holding the government to a
greater degree of responsibility than the defendant . . . for
imprecisions or ambiguities in . . . plea agreements." *Id.* at
399 (citing *United States v. Harvey*, 791 F.2d 294, 301 (4th
Cir. 1986)). We believe that it is particularly appropriate to
construe the ambiguity against the government in this case
where the government could have taken steps to avoid
imprecision. The ambiguity we have identified might have
been avoided had the provision read "[t]he Government
agrees to recommend that the defendant's base offense level
be calculated using 1000 pounds of marijuana and 1 kilogram
of cocaine and that *no other type or quantity of drugs* be used
to increase the defendant's base offense level." We,
therefore, construe the plea agreement according to the
defendant's understanding that a subsequent adjustment under
§ 3B1.1(a) was impermissible.

Having done so, we must necessarily conclude that the
government breached the plea agreement. The Supreme
Court has held that "when a plea rests in any significant
degree on a promise or agreement of the prosecutor, so that it

base offense level be calculated using 1000 pounds of
marijuana and 1 kilogram of cocaine and that no other
relevant conduct be used to increase the defendant's base
offense level." J.A. at 36. On September 13, the district
court entered orders reflecting the guilty pleas as to the
charges in the indictment and Information. On December 22,
1999, Fitch was charged by Information with one count of
money laundering. The next day she pled guilty to that charge
as well.

The defendant's sentencing hearing was held on August 25,
2000. At sentencing, the government requested that Fitch
receive a four-point enhancement for her role in the offense
as an organizer and leader under Sentencing Guidelines
§ 3B1.1(a).[1] Fitch did not dispute that she was in fact an
organizer and leader of criminal activity. Fitch claimed
instead that she understood the plea agreement to mean that
no conduct other than the quantity of drugs specified in the
plea agreement would be used to increase her sentence. The
district court, however, agreed with the government that the
plea agreement dealt only with the amount of marijuana and
cocaine that would be used to calculate the defendant's *base
offense level*, and that nothing in the agreement prevented the
application of § 3B1.1. Thereafter, the charges were grouped
pursuant to Sentencing Guidelines § 3D1.2(b)-(c) and Fitch
was sentenced for violations of 21 U.S.C. §§ 841, 846 and 18
U.S.C. § 1956 to 121 months imprisonment followed by four
years of supervised release.

---

[1]Section 3B1.1(a) provides:

"Based on the defendant's role in the offense, increase the offense level
as follows:

(a)    If the defendant was on organizer or leader of a criminal activity
       that involved five or more participants or was otherwise
       extensive, increase by 4 levels."

U.S.S.G. § 3B1.1(a).

## II. DISCUSSION

The resolution of this appeal turns on the interpretation of the defendant's plea agreement. Because "[p]lea agreements are contractual in nature," *United States v. Robison*, 924 F.2d 612, 613 (1991), a district court's construction of a plea agreement presents a question of law which this court reviews *de novo*. *Lancaster Glass Corp. v. Phillips ECG, Inc.,* 835 F.2d 652, 658 (6th Cir. 1987). In *Lancaster*, we observed that "[w]hen reviewing the district court's interpretation of a contract . . . an appellate court is not limited by the 'clearly erroneous' rule. The interpretation and construction of a written contract . . . are matters of law, thus allowing *de novo* review." *Id.* (citations omitted). Further, whether the government's conduct in this case was in breach of the plea agreement is likewise reviewable *de novo*. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

We believe that the defendant's sentence cannot stand in light of a material ambiguity in the plea agreement. The provision at issue states, "[t]he government agrees to recommend that the defendant's base offense level be calculated using 1000 pounds of marijuana and 1 kilogram of cocaine and that no other relevant conduct be used to increase the defendant's base offense level." Fitch argued at sentencing that according to the plea agreement nothing – including her leadership role in the offense – would be used to enhance her sentence. The government argued before the district court, as it argues here, that the defendant's reading of the plea agreement is strained. The government contends that the disputed language relates solely to the amount of marijuana and cocaine that would be used to calculate the defendant's base offense level, and that the agreement did not preclude the government from requesting an upward adjustment under § 3B1.1.

The crux of the government's argument, accepted by the district court, is that "base offense level" is a term with a technical meaning under the Sentencing Guidelines. While

the defendant's base offense level is the starting point in the sentencing computation, "base offense level" is a term of art separate and distinct from the subsequent adjustments or enhancements that are applied in light of the specific offense characteristics or special factors under Chapter Three of the Sentencing Guidelines. The following exchange occurred during the sentencing hearing:

> MR. O'BRIEN [for the government]: The base offense level is exactly what it says. It is the base offense level.
>
> THE COURT: It is. It is a term that is defined in our process.
>
> MR. O'BRIEN: Right.
>
> THE COURT: It is also defined - - well, it also has a particular entry point on our - - in our report. Base offense level, paragraph 30 of the - - it's not the same thing as the total offense level.
>
> MR. O'BRIEN: Right. And from the base offense level you have adjustments up and adjustments down.
>
> THE COURT: Exactly . . . .

J.A. at 112.

In reaching this conclusion, however, the district court overlooked the term "relevant conduct" in the plea agreement, and failed to consider the fact that "relevant conduct," like "base offense level," is a term with a specialized meaning under the guidelines. Under Sentencing Guidelines § 1B1.3 the term "relevant conduct" means "Factors that Determine Guideline Range." The section includes as relevant conduct those factors that contribute to adjusting the offense level upward. Thus, "relevant conduct" incorporates "the base offense level . . . specific offense characteristics . . . and adjustments in Chapter Three . . . ." U.S.S.G. § 1B1.3(a)(i)-(ii), (iv). As already explained, the base offense level is the