RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-4234

MARSHYIA S. LIGON,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00351-1—Benita Y. Pearson, District Judge.

Argued: August 8, 2019

Decided and Filed: September 11, 2019

Before: COLE, Chief Judge; GRIFFIN and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Christian J. Grostic, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. James A. Ewing, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Christian J. Grostic, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. James A. Ewing, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

COLE, Chief Judge. Marshyia Ligon used her friend's identification to purchase a gun and subsequently pleaded guilty to making a false statement in acquisition of a firearm. During plea negotiations, the government agreed to argue for a sentence in the Guidelines range as

contemplated by the plea agreement, which was 21 to 27 months. At the sentencing hearing, however, the government argued for a sentence within the Guidelines range as contemplated by the probation office, which was 30 to 37 months because of an enhancement under U.S.S.G. § 2K2.1(b)(6)(B). The district court concluded the enhancement applied and sentenced Ligon to 35 months' imprisonment. Ligon appeals her sentence, arguing that the government breached the plea agreement and that the district court erred in applying the enhancement. Because the government argued for a higher sentence than contemplated by the plea agreement, it breached the agreement and Ligon is entitled to resentencing before a different district judge.

## I. BACKGROUND

On October 4, 2017, Marshyia Ligon purchased a Smith & Wesson, Model M&P 15, 556-caliber rifle from a store in Eastlake, Ohio, using her friend's name and photo identification. Ligon went to the store with her then-boyfriend, Darnell Peterson, but she could not purchase the gun using her own name and identification because she was only nineteen, and Peterson could not purchase the gun because he was only eighteen and under indictment for a felony offense of violence. On October 11, 2017, the firearm purchased by Ligon was used in the attempted robbery of a credit union by Melvin Hill, Arvin Williams, and Dawane Nelson. After the attempted robbery, Peterson told Ligon that he was supposed to go with Hill, Williams, and Nelson to rob the credit union but decided not to at the last minute.

Ligon was charged with making a false statement in acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) and pleaded guilty to that offense. In the plea agreement, the parties agreed to "recommend that the [c]ourt impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations" in the agreement, and that "[n]either party [would] recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence." (Plea Agreement, R. 17, PageID 89.) The plea agreement computed Ligon's base offense level as 14 and stated that no specific offense characteristics applied. The government agreed to recommend a two-level reduction for acceptance of responsibility.

The presentence report ("PSR") agreed that Ligon's base offense level was 14 but also recommended applying a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B), which applies if a defendant transferred a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. Ligon objected to the PSR, arguing that the four-level enhancement should not apply because she did not know the firearm would be used in connection with another felony.

At sentencing, the district court concluded that Ligon had knowledge and reason to believe the weapon would be used in a felony offense and found that the four-level enhancement applied. The district court then applied the contemplated two-level reduction for acceptance of responsibility, granted the government's motion for an additional one-level reduction for acceptance of responsibility, and calculated Ligon's criminal history as category IV. The court then announced that its Guidelines calculations "place[d] Ms. Ligon within the range of 30 months at the low end, 37 months at the high end" and asked the parties if they had any objections. (Sentencing Hr'g Tr., R. 41, PageID 272.) The government responded that it did not have any objections and Ligon noted her continued objection to the four-level enhancement.

The district court then asked for allocution statements. The government asked the court to "impos[e] a sentence within the guideline range as laid out, 30 to 37 months" and proceeded to discuss the Section 3553(a)(1) factors, noting that a "sentence within this range" would reflect the serious nature of the offense and promote respect for the law, and stating "a prison sentence within this range would be called for in this case." (*Id.* at PageID 273–76.) The government argued that Ligon's offense was "not merely just a straw purchase of a firearm" but instead was an "egregious form of the offense"—a "straw purchase of . . . a semiautomatic assault rifle" that "the court[] already found that she [had] reason to believe . . . would be used in a felony offense, and it was indeed used in a very violent felony offense attempt." (*Id.* at PageID 273–74.)

At the beginning of Ligon's allocution, she noted her belief that the plea agreement "bound the government to the guideline range that was contemplated in the plea agreement, which without th[e] four-level enhancement would be a guideline range of 21 to 27 months." (*Id.* at PageID 277.) She then argued for a sentence at the bottom of the contemplated Guidelines range—21 months. After hearing both parties' arguments, the district court

sentenced Ligon to 35 months' imprisonment. After the sentence was imposed, Ligon again reiterated her objection to the four-level enhancement. The district court overruled her objection, and then asked the government "to explicitly state [its] objections for the record." (*Id.* at PageID 294.) The government and the district court then had the following interaction:

> [Gov't]:    Well, with respect to the four-level enhancement, it was our position -- and, again, in my -- and I'm not sure if this would -- if it would be an objection. But I would just reiterate that what I put in my sentencing memorandum, that was still the government's position. I realize that when I was arguing for a sentence, and a lengthy sentence, which I do believe that this defendant deserves, and it's already been imposed by this court, I said 31 to 37 months. However, I didn't want to -- I don't want to be inconsistent. It was the position --
>
> [Court]:    Listen, I'm not sure what you're trying to say, but maybe I can help you.
>
> [Gov't]:    Okay.
>
> [Court]:    The plea agreement that Ms. Ligon entered doesn't obligate me to do one thing or the other. And, in fact, had it, at this juncture, meaning at this moment, I'd reject it and impose the sentence that I've just imposed. I'm not bound by that agreement. I'm not the government. I'm not the defense. So if you intend to make an objection, by George, make it now or take your seat.
>
> [Gov't]:    Okay. Then I would object to that enhancement. I --
>
> [Court]:    Overruled for the reasons stated.

(*Id.* at PageID 294–95.)

The district court subsequently entered its judgment and Ligon timely appealed her sentence.

## II. ANALYSIS

Ligon argues that the government breached the plea agreement by arguing for a sentence within the range of 30–37 months, rather than the contemplated 21–27 months. "We review the question of whether the government's conduct, or lack thereof, violated its plea agreement with a defendant *de novo*." *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002).

"Plea agreements are contractual in nature. In interpreting and enforcing them, this [c]ourt uses traditional principles of contract law." *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Plea agreements must "be enforced according to their terms." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). "In determining whether a plea agreement has been broken, courts look to what was reasonably understood by the defendant when he entered his plea of guilty." *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990) (quotations and alterations omitted). "Ambiguities in a plea agreement must be construed against the government." *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002).

It is a "seemingly self-evident proposition that prosecutors cannot breach plea agreements." *Lukse*, 286 F.3d at 913. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "Because a defendant obtains a plea agreement only at the expense of his constitutional rights, 'prosecutors are held to meticulous standards of performance.'" *Moncivais*, 492 F.3d at 662 (quoting *United States v. Vaval*, 404 F.3d 144, 152–53 (2d Cir. 2005)). "Satisfying this obligation requires more than lip service on a prosecutor's part." *Id.* The government may not explicitly repudiate the agreement or engage in an "end-run[] around" the promises contained in the agreement. *Id.* (internal citations and quotations omitted).

If the government breaches a plea agreement, a defendant is entitled to relief regardless of whether the district court was ultimately influenced by the breach and regardless of whether the breach was inadvertent. The Supreme Court made these two principles clear in *Santobello*. There, the defendant entered into a plea agreement that stated that the prosecutor would not make any sentence recommendation. 404 U.S. at 262. But at sentencing, a new prosecutor who replaced the prosecutor who had negotiated the plea recommended the maximum one-year sentence, "apparently ignorant of his colleague's commitment." *Id.* at 259. The Court held that the government breached the plea agreement and stated "[t]hat the breach of the agreement was inadvertent does not lessen its impact." *Id.* at 262.

And even though the sentencing judge explicitly stated that he was "not at all influenced" by what the government said, the Court still found that "the interests of justice and appropriate

recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" necessitated a remand. *Id.* at 259, 262. Thus, "the touchstone of *Santobello* is whether the prosecution met its commitment and not whether the court would have adopted the government's recommendation." *Cohen v. United States*, 593 F.2d 766, 772 (6th Cir. 1979) (italicization added); *see also Barnes*, 278 F.3d at 648 (explaining that "the fact that a sentencing court may have implied that it would not have accepted a certain recommendation made by the government in a plea agreement" is an "insufficient reason[] to find that the government upheld its part" of the agreement).

After *Santobello*, we have found repeatedly that a defendant is entitled to relief when the government breaches a plea agreement, even if the breach was inadvertent or did not affect the district court's decision. *See, e.g.*, *Barnes*, 278 F.3d at 647–48 (finding reversible error when government agreed to recommend that defendant be sentenced at the low end of the Guidelines but failed to state his recommendation on the record); *Lukse*, 286 F.3d at 913 ("While the government might have inadvertently failed to determine whether the Appellants provided substantial assistance during other investigations, . . . an inadvertent failure to perform obligations under a plea agreement is nonetheless a breach."); *United States v. Swanberg*, 370 F.3d 622, 628–29 (6th Cir. 2004) (finding a violation of the plea agreement "when the district court unwittingly relied upon the information from [defendant's] guilty-plea proffer in imposing the sentence enhancement, and the prosecutor said nothing to correct this error" despite the plea agreement's promise that the proffered information would not be used at sentencing); *United States v. Fitch*, 282 F.3d 364, 366–68 (6th Cir. 2002) (holding that the government breached the plea agreement by arguing for an increase due to defendant's leadership role, despite agreeing that "no other relevant conduct" would be used to increase the defendant's base offense level). Today, we do so again.

The government breached the plea agreement by arguing for a sentence above the agreed-upon Guidelines range. The government does not dispute that it agreed to recommend a Guidelines range of 21 to 27 months, or at least to abstain from making a recommendation outside of that range. But at sentencing the government asked the district court to impose a sentence "within the guideline range as laid out [by the court], the 30 to 37 months."

(Sentencing Hr'g Tr., R. 41, PageID 273.)   Furthermore, the government emphasized the "egregious form of the offense," pointed out that the court "already found that [Ligon had] reason to believe that [the gun] would be used in a felony offense," and emphasized Ligon's "lengthy criminal history," arguing that "a sentence within [the 30- to 37-month range] would certainly reflect both the serious nature of this offense and promote respect for the law." (*Id.* at PageID 273–76.)  The government's argument for a sentence within 30 to 37 months violated the plain terms of the plea agreement.

The government admits that it mistakenly asked for a sentence within the 30- to 37-month range but contends that its acknowledgement of its misstatement at the end of the hearing "cured" any breach.  Some circuits "have allowed for the curing of a plea agreement breach," which occurs when the legal defect is removed, or the legal error is corrected.  *United States v. Purser*, 747 F.3d 284, 293–94 (5th Cir. 2014).  But, to the extent a cure is possible, our sister circuits require that the government offer an "unequivocal retraction" of its erroneous position to sufficiently cure a breach.  *United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010) (concluding that government's equivocal retraction of earlier argument for a sentence at the top of the Guidelines range did not cure the breach of plea agreement, which required the government to recommend a sentence at the bottom of Guidelines range); *see also Purser*, 747 F.3d at 293 n.44 ("[A]n equivocal or half-hearted recantation may be inadequate to cure a breach.").

Even if we were to recognize that the government can cure its breach, it did not unequivocally retract its erroneous argument.  The government's attorney stated, "I realize that when I was arguing for a sentence, and a lengthy sentence, which I do believe that this defendant deserves, and it's already been imposed by this court, I said 31 to 37 months.  However, I didn't want to -- I don't want to be inconsistent.  It was the position --" (Sentencing Hr'g Tr., R. 41, PageID 294.)  It is not clear what the government was going to say next, because it was interrupted by the district judge—who noted she was "not sure what [the government was] trying to say"—so we do not know what position the government was ultimately going to endorse. (*Id.* at PageID 294–95.)  And the position that was taken by the government in its alleged attempt to cure was that Ligon "deserve[d]" the "lengthy sentence" that was already imposed by the

court. (*Id.* at PageID 294.) Such a statement indicating that the prosecutor disagrees with the plea agreement's recommendation cannot constitute a cure of the breach. *See Diaz-Jimenez*, 622 F.3d at 696–97 (finding no cure when prosecutor "undermined the plea agreement by saying 'I suppose a larger sentence could be appropriate'"). The district court's confusion is further evidence that any attempted cure was not unambiguous. Furthermore, the government tried to correct its mistake only after the district court imposed a sentence—a sentence within the higher range impermissibly argued for by the government. The government has pointed us to no cases in which a court has found a cure after a defendant's sentence has been imposed. In these circumstances, we conclude that the government did not cure its breach.

We next turn to Ligon's remedy. In *Santobello*, the Court left it up to the trial court to determine whether the defendant was entitled "only" to specific performance of the plea agreement, "in which case [the defendant] should be resentenced by a different judge," or whether the defendant should be granted the relief he sought, "the opportunity to withdraw his plea of guilty." 404 U.S. at 263. We have interpreted *Santobello* to mean that "[a] breached plea agreement may be remedied by either specific performance of the agreement or by allowing the defendant to withdraw the plea." *Mandell*, 905 F.2d at 973. When a defendant, like Ligon, seeks only "the lesser relief of specific performance of the agreement," there is no need for the district court to determine the remedy—we "should honor that election . . . and remand with direction that [she] 'be resentenced by a different judge.'" *United States v. Warner*, 820 F.3d 678, 685 (4th Cir. 2016) (quoting *Santobello*, 404 U.S. at 263).

The government's argument that Ligon need not be resentenced by a different district judge is foreclosed by *Santobello*. 404 U.S. at 263 (holding that if petitioner is granted specific performance he "should be resentenced by a different judge"). Indeed, we have already concluded that the appropriate remedy for the government's breach of a plea agreement is "vacat[ing] the defendant's sentence and remand[ing] for resentencing before a different district court judge." *Fitch*, 282 F.3d at 368; *Barnes*, 278 F.3d at 649 (same). Resentencing before a different district judge is necessary for defendants to get the benefit of the bargain, and to preserve the appearance of an impartial judiciary—one that is not influenced by the prosecutor's previous breach. We emphasize that resentencing before a different district judge "is in no sense

to question the fairness of the sentencing judge" and is not "intend[ed as] criticism of the district judge." *Fitch*, 282 F.3d at 368 (quoting *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000)); *see also Barnes*, 278 F.3d at 649. Nonetheless, resentencing before a different district judge is the appropriate remedy when the government breaches a plea agreement and Ligon is entitled to such relief.

In light of this conclusion, we need not reach Ligon's second argument on appeal, that the district court clearly erred in applying the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

### III. CONCLUSION

For these reasons, we vacate Ligon's sentence and remand her case for resentencing before a different district judge.