RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MANUEL ESTRADA-GONZALEZ,

*Defendant-Appellant*.

⎱
⎰  No. 22-3001

———————————————

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cr-00390-1—John R. Adams, District Judge.

Decided and Filed:  April 26, 2022

Before:  ROGERS, KETHLEDGE, and MURPHY, Circuit Judges.

———————————————

### COUNSEL

———————————————

**ON BRIEF:**  Christian J. Grostic, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Rebecca Chattin Lutzko. UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

———————————————

### OPINION

———————————————

MURPHY, Circuit Judge.  Suppose a prosecutor told a district court that "a sentence at the top of a defendant's guidelines range was at least appropriate under the relevant sentencing factors, if not required by them."  The court would likely understand the prosecutor to be arguing that such a sentence was legally permissible and perhaps even legally compelled.  Now suppose that the prosecutor told the court that "a sentence at least at the top of the defendant's guidelines range was appropriate."  The court would likely take the prosecutor to be arguing that such a

sentence was the minimally acceptable one and that an above-guidelines sentence might also be justified.

This case requires us to consider which of these two ideas the prosecutor conveyed during Manuel Estrada-Gonzalez's sentencing for illegally reentering the country. Estrada-Gonzalez claims that the prosecutor impliedly recommended an above-guidelines sentence by stating that a sentence at the "high end of the sentencing guideline range would be at the least appropriate in this case." Sent. Tr., R.29, PageID 140. He thus argues that the prosecutor breached the parties' plea agreement, which barred her from "suggest[ing] in any way" that the court should vary above the guidelines range. Agreement, R.16, PageID 67. Yet the district court that heard this ambiguous statement in real time rejected Estrada-Gonzalez's reading of it, finding instead that the prosecutor had been advocating only "for a sentence at the high range of the guidelines." Sent. Tr., R.29, PageID 146. And while our precedent instructs us to review the ultimate question whether a prosecutor's conduct breached a plea agreement de novo, *see United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021), we clarify in this case that we must review any subsidiary findings about the historical facts under the deferential clear-error standard. What the prosecutor expressed with her statement is that type of fact question. Because the district court did not clearly err in its resolution of the question, the government did not breach the plea agreement. We thus affirm.

I

Born and raised in Guatemala, Estrada-Gonzalez first entered the United States as a teenager with his father. In December 2001, shortly after a Missouri court convicted a then-adult Estrada-Gonzalez of forgery, the government removed him to Guatemala. Twenty years later, Estrada-Gonzalez came to the attention of the authorities in northeast Ohio when the mother of his longstanding girlfriend called the police on him. According to police reports, Estrada-Gonzalez's girlfriend told the officers who arrived on the scene that he had gotten intoxicated and threatened to kill her (as he had done frequently in the past). The reports noted further that Estrada-Gonzalez had possessed a machete while making these threats. He had fled the scene when the officers arrived, but they successfully arrested him on domestic-violence charges and seized the machete.

The federal government soon indicted Estrada-Gonzalez for illegally reentering the United States following his earlier deportation, in violation of 8 U.S.C. § 1326. He pleaded guilty to this reentry crime. In the plea agreement, Estrada-Gonzalez and the government both agreed to recommend that the district court impose a sentence within the applicable guidelines range. The agreement added: "Neither party will recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence." Agreement, R.16, PageID 67.

At the start of the sentencing hearing, though, the district court told the parties that it was contemplating an upward variance from Estrada-Gonzalez's guidelines range. The court and the parties agreed that Estrada-Gonzalez faced a guidelines range of 6 to 12 months' imprisonment. But the court then expressed concern with the claims in the police reports, describing how they suggested that Estrada-Gonzalez had threatened to kill his girlfriend and burn their house down with their children in it.

Following its summary of the reports, the court asked for the government's position on the proper sentence. The prosecutor pointed out that the state had dismissed Estrada-Gonzalez's domestic-violence charges because the federal government had taken custody of him. Sent. Tr., R.29, PageID 138. She next played a portion of an officer's body-camera footage from the night of Estrada-Gonzalez's arrest to give the court a "clear understanding" of what had happened and to show the "present sense impressions of" those involved. *Id.*, PageID 139–40. After airing the video, the prosecutor noted that a sentence at the top of the guidelines range "would be at the least appropriate":

> I realize that the statutory maximum is 20 years based on his prior forgery conviction from Missouri in 2001 prior to being deported. However, with the sentencing guideline range, it is between 6 to 12 months, I do realize he has since served seven months and four days incarcerated on this case, but based off the circumstances, and clearly I would echo [the court's] sentiments in regards to the safety of not only the wife, the children, as well as the mother and her boyfriend, who reside in the house, certainly a high end of the sentencing guideline range would be at the least appropriate in this case.

*Id.*, PageID 140.

Ultimately, the court chose to vary upward from Estrada-Gonzalez's guidelines range. It relied primarily on Estrada-Gonzalez's history of threatening violence against his family. Finding Estrada-Gonzalez's conduct "deeply troubling," the court opined that this conduct made his case stand out from the typical illegal-reentry case. *Id.*, PageID 143–44. The court thus chose an 18-month term of imprisonment, one that was six months above the top end of Estrada-Gonzalez's guidelines range.

The court ended the hearing by asking the parties whether they had any final objections. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). Defense counsel argued that the government had violated the plea agreement by advocating for a sentence "at least at the high end of the guidelines range[.]" Sent. Tr., R.29, PageID 146. This argument, counsel suggested, implied that an above-guidelines sentence might be appropriate. *Id.* But the plea agreement barred the government from suggesting "in any way" that the court should vary above the guidelines range. *Id.*

The district court overruled the objection. The court "did not interpret [the prosecutor's] statement to mean anything other than the government's lawyer is asking for a sentence at the high range of the guidelines." *Id.* It found that defense counsel was "misstating or misconstruing" the statement. *Id.* The prosecutor then made "clear" that she had been advocating for a sentence at the top of the guidelines range, not above it. *Id.*, PageID 147.

II

Estrada-Gonzalez renews his argument that the government breached the plea agreement by impliedly advocating for an above-guidelines sentence. The ground rules for this argument are well established. Our plea-agreement precedent blends a mix of contract principles with a mix of constitutional ones. Like any agreement with consideration on both sides, a plea agreement is "essentially" a contract between the defendant and the government. *Puckett v. United States*, 556 U.S. 129, 137 (2009); *see, e.g.*, *Warren*, 8 F.4th at 448; *United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019); *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Courts thus have looked to the common law of contracts to help resolve such issues as whether a plea agreement contained a particular term, *see United States v. Robison*, 924 F.2d

612, 613–14 (6th Cir. 1991), or whether the government's breach of the agreement voided it, *see Puckett*, 556 U.S. at 137.

Unlike an ordinary agreement, however, a plea agreement implicates the constitutional protections for criminal defendants in our Bill of Rights. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984); *United States v. Barnes*, 278 F.3d 644, 647–48 (6th Cir. 2002). Because a defendant who pleads guilty waives such things as the Sixth Amendment right to a jury trial, the Constitution (not just the contract) requires the government to live up to the promises that it uses to induce the defendant to waive these rights. *See Barnes*, 278 F.3d at 647–48; *see also Santobello v. New York*, 404 U.S. 257, 262–63 (1971); *cf.* Philip Hamburger, *Purchasing Submission: Conditions, Power, and Freedom* 44–45, 167 (2021). Federal courts thus have not treated plea agreements as purely state-law creatures subject solely to state-law contract rules. They have instead developed a body of federal principles to guide the interpretation and enforcement of plea agreements. *See United States v. Herrera*, 928 F.2d 769, 773 (6th Cir. 1991).

How do these federal principles apply to the parties' disagreement in this case? Clarifying where their disagreement sits within our caselaw goes a long way toward clarifying its proper resolution. In some of our cases, the defendant and the government have disagreed over whether they entered into a plea agreement at all (e.g., they dispute whether they reached an oral contract) or whether the agreement contained a particular term (e.g., they dispute whether the government agreed not to take a position on the appropriate sentence). *See, e.g.*, *Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir. 1999); *Herrera*, 928 F.2d at 773; *Baker v. United States*, 781 F.2d 85, 88–90 (6th Cir. 1986). Consistent with the common law of contracts, we have treated these "contract-formation" questions as factual issues for the district court subject to deferential clear-error review. *See United States v. Quesada*, 607 F.3d 1128, 1131 (6th Cir. 2010); *Robison*, 924 F.2d at 614; *see also* 11 Williston on Contracts § 30:3 (4th ed.), Westlaw (database updated Nov. 2021).

Here, however, the parties agree on these basic contract-formation facts. Both sides signed a written agreement. *See* Agreement, R.16, PageID 73. And both sides agree that this

contract included a provision that prohibited the government from "suggest[ing] in any way" that the district court should impose an upward variance. *Id.*, PageID 67.

In some of our other cases, the parties have conceded that the plea agreement contained a particular term, but they have disputed what that term means (e.g., they dispute whether the term should be read to require the government to seek a downward departure). *See, e.g.*, *United States v. Ricks*, 398 F. App'x 135, 137 (6th Cir. 2010); *United States v. Fitch*, 282 F.3d 364, 365–67 (6th Cir. 2002). Again consistent with common-law contract principles, we have treated the question whether an agreement's language is unambiguous as a legal issue subject to de novo review. *See Fitch*, 282 F.3d at 366; *see also* Restatement (Second) of Contracts § 212(2) & cmt. d (Am. L. Inst. 1981). When interpreting that language, moreover, we have focused on how a "reasonable person" would understand it—just as a court would with any contract. *United States v. Moncivais*, 492 F.3d 652, 663 (6th Cir. 2007); *see also* 11 Williston on Contracts, *supra*, § 30:6. And if we find the language ambiguous, we have held that the agreement's meaning becomes a fact question that turns on the parties' intent. *See Ricks*, 398 F. App'x at 137; *see also* Restatement (Second) of Contracts § 212(2) & cmt. e. But the government will face an uphill battle at this point. At the end of the interpretive process, we typically resolve any ambiguities in a defendant's favor because of the agreement's effect on the defendant's constitutional rights. *See Warren*, 8 F.4th at 448; *Fitch*, 282 F.3d at 367–68; *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992).

Here, however, the parties agree on the meaning of the relevant provision. By prohibiting the government from "suggest[ing]" an upward variance "in any way," Agreement, R.16, PageID 67, the agreement unambiguously committed the government to a "sweeping promise," *Warren*, 8 F.4th at 449. As we have explained when interpreting the same language in another agreement, this clause did not just bar the government from expressly advocating for an above-guidelines sentence. *See id.* at 448–49. The clause also meant that the government could not "*in any way* 'mention [a variance] as something to think over,' 'bring [a variance] to the mind for consideration,' 'propose' or 'mention' a variance 'as a possibility,' or put a variance 'forward by implication.'" *Id.* (quoting *Webster's New World College Dictionary* 1450 (Sparks et al. eds., 5th ed. 2020) and *Webster's Third New International Dictionary* 2286 (2002)).

In still other cases, the parties have not disputed the law (what does the contractual term mean?) or the facts (what did the government do?). Rather, they have disputed whether the undisputed historical facts (e.g., the government's failure to *expressly* request a sentence at the low end of the guidelines range) rose to the level of a "breach" of the unambiguous contractual term (e.g., a term requiring the government to recommend such a sentence). *See Barnes*, 278 F.3d at 646–48. We have repeatedly treated such questions about whether a party has breached a plea agreement as questions of law subject to de novo review. *See, e.g.*, *Warren*, 8 F.4th at 448; *Barnes*, 278 F.3d at 646; *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). That standard comports with background common-law principles, which indicate that "the issue of whether a party to a contract has breached a contractual provision is . . . a question of law" when "there is no controversy over the facts[.]" 23 Williston on Contracts, *supra*, § 63:15. Considering the question's constitutional pedigree, this standard also comports with Supreme Court precedent that has reviewed similar constitutional questions (such as whether probable cause exists) de novo. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 n.4 (2018) (citing *Ornelas v. United States*, 517 U.S. 690, 697 (1996)).

*Warren* provides a good example of this type of dispute. There, like here, the agreement indicated that the prosecutor would not suggest an upward variance in any way. *See* 8 F.4th at 448–49. At sentencing, however, the prosecutor explained that the government had not known that the defendant's prior convictions involved shootings. *Id.* at 446–47. The prosecutor went on to opine that the government "likely would have made a different recommendation had it known [the defendant] shot at multiple people." *Id.* at 449. Neither the prosecutor nor the defendant found any ambiguity in this statement: the prosecutor plainly indicated that, in retrospect, the government would not have recommended a guidelines sentence if it had possessed all relevant information when entering the plea deal. *Id.* So we had to decide whether this unambiguous comment conflicted with the unambiguous agreement not to suggest an upward variance in any way—a question that we reviewed de novo. *Id.* at 448–49. In the end, we held that the statement violated the agreement because the government brought the idea of a variance "forward by implication" and implied that it did not believe that a guidelines sentence was appropriate. *Id.*

Estrada-Gonzalez suggests that his case falls within *Warren*'s category of disputes. He argues that the facts are undisputed, that we must review the district court's conclusion de novo, and that the prosecutor suggested by implication that the court should impose an above-guidelines sentence. But Estrada-Gonzalez misclassifies his case. In *Warren*, the parties did not dispute the meaning of the prosecutor's statements, so we opted to resolve ourselves the question whether the undisputed facts rose to the level of a breach of the unambiguous provision. *Id.* at 448–51. This case, by contrast, hinges on a disputed factual question about what the prosecutor actually conveyed. Recall again her words: "certainly a high end of the sentencing guideline range would be at the least appropriate in this case." Sent. Tr., R.29, PageID 140.

This statement admits of two meanings. On the one hand, the prosecutor's statement might be taken to convey that a high-end guidelines term would be the lowest appropriate sentence, implying that an above-guidelines sentence would also be appropriate. One meaning of "at the least" could support this view in the abstract. According to Estrada-Gonzalez, the prosecutor's use of this adverbial phrase conveyed the idea that the top-of-the-guidelines sentence was the "lowest possible" length, thereby impliedly suggesting that a sentence "more than" that length (an above-guidelines sentence) would also be proper. *American Heritage Dictionary of the English Language* 1000 (5th ed. 2018); *Cambridge Dictionary*, available at https://dictionary.cambridge.org/us/dictionary/english/at-least (last visited Apr. 14, 2022); *see also United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010). If the prosecutor expressed this message, she would have breached the agreement. *Cf. Warren*, 8 F.4th at 448–49.

On the other hand, this statement might be interpreted to mean that a top-of-the-guidelines sentence was at a minimum *permissible* under a proper balancing of the sentencing factors in 18 U.S.C. § 3553(a)—if not *required* by that balancing. As the government points out, the prosecutor did not use the phrase "at the least" to modify the length of the sentence (the way in which Estrada-Gonzalez reads her statement). Rather, she used that phrase to modify "appropriate"—that is, "suitable" or "fitting." *American Heritage*, *supra*, at 88. To suggest that a top-of-the-guidelines sentence was at a minimum "suitable" could be read to imply nothing more than that it might also be required. Nobody, for example, would have thought that the prosecutor impliedly advocated for an above-guidelines sentence if she had said that the top-of-

the-guidelines sentence was "required by the § 3553(a) factors or at the least permitted by them." If her statement were interpreted in this way, moreover, she would not have breached the agreement.

So which version should we choose? As an appellate court that can review only the words on the transcript page, we are poorly positioned to decide what the prosecutor conveyed with this ambiguous commentary. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). Yet the district court was ideally positioned to answer that question because it had the opportunity to listen to her live. *See id.*; *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Its choice between the two interpretations, for example, might have rested in part on the prosecutor's pauses and inflection when making the statement. Perhaps Estrada-Gonzalez's reading might be more likely if the prosecutor had emphasized the phrase "at the least," whereas the government's might be more likely if she had emphasized the word "appropriate." In other words, the correct resolution of this question might turn on the "crucial human element" that only the district court had the ability to assess. *United States v. Sheron*, 787 F. App'x 332, 333 (6th Cir. 2019).

These considerations lead us to conclude that the parties' dispute in this case falls within a category different from *Warren*—one that turns on a district court's resolution of the "historical" facts about what happened (separate from its application of the law to the facts). *United States v. Thomas*, 933 F.3d 605, 610 (6th Cir. 2019) (quoting *U.S. Bank*, 138 S. Ct. at 966). To be sure, we have for decades generically said that we review de novo the question whether the prosecutor breached the plea agreement. *See Wells*, 211 F.3d at 995. But, like the other circuit courts to consider this question, we do not think that this standard should cover the subsidiary question of "what are the facts," *United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir. 1989), which includes "what the parties said or did," *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994) (citation omitted). Rather, we must review a district court's findings about these historical facts under the deferential clear-error standard. *See Martin*, 25 F.3d at 217; *Moscahlaidis*, 868 F.2d at 1360; *see also United States v. Clark*, 55 F.3d 9, 11 (1st Cir. 1995); *cf. United States v. Pollard*, 959 F.2d 1011, 1024 (D.C. Cir. 1992). This conclusion comports with basic contract-law principles—as courts unsurprisingly review factual findings for clear

error in that setting too. *See, e.g.*, *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 599 (6th Cir. 2009); 23 Williston on Contracts, *supra*, § 63:15.

The district court, moreover, did not clearly err by finding that the prosecutor conveyed only that the government recommended a sentence at the high end of the guidelines range. Sent. Tr., R.29, PageID 146. The deferential clear-error standard requires us to defer to the district court's finding about what transpired "even if we would have made [the] opposite finding," so long as both stories are plausible on the record as a whole. *United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021); *see also Cooper v. Harris*, 137 S. Ct. 1455, 1468 (2017). The court's finding clears this low bar. On its own terms, the prosecutor's statement could reasonably be read to imply nothing more than that the requested top-of-the-guidelines sentence was required, not just permitted. Sent. Tr., R.29, PageID 140. The prosecutor also made the statement in response to Estrada-Gonzalez's argument that the court should impose a sentence of time served (7 months). *Id.* It thus arose in the context of a debate about whether the court should impose a bottom-of-the-guidelines sentence, further distancing it from any upward-variance suggestion. *Cf. United States v. Mason*, 410 F. App'x 881, 889 (6th Cir. 2010). The district court also correctly recognized that Estrada-Gonzalez's counsel, when making this objection, "misconstru[ed]" the prosecutor's statement to suggest that she had argued for a sentence "at least at the high end of the guideline range[.]" Sent. Tr., R.29, PageID 146. By subtly changing the word that "at the least" modified, counsel fundamentally transformed the nature of the statement. And the prosecutor herself later clarified the ambiguity by indicating that she had meant to ask only for a top-of-the-guidelines sentence. *Id.*, PageID 147. The record thus plausibly supported the district court's finding.

Estrada-Gonzalez responds that we must interpret ambiguities in the plea agreement in his favor. *See Warren*, 8 F.4th at 448. But this case does not contain an ambiguous plea agreement. We accept Estrada-Gonzalez's broad reading of it. The case instead contains an ambiguous record. So this presumption of contract interpretation has no relevance here.

That may be so, Estrada-Gonzalez next argues, but we have also indicated that prosecutors should be held to "meticulous standards of performance." *Moncivais*, 492 F.3d at 662 (quoting *United States v. Vaval*, 404 F.3d 144, 152–53 (2d Cir. 2005)). Estrada-Gonzalez

misreads this statement to the extent he argues that it compels a district court to find the underlying facts in a defendant's favor whenever the evidence could cut both ways. The statement means only what we said in *Warren*: "The government cannot escape its duties under a plea agreement with a wink and a nod." 8 F.4th at 449. Under the district court's findings of fact in this case, though, neither a wink nor a nod occurred. The government fully performed as promised.

We affirm.