RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v.*

WENDY REINBERG,

                *Defendant-Appellant*.

No. 22-5586

───────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:21-cr-20071-2—John Thomas Fowlkes, Jr., District Judge.

Decided and Filed:  March 13, 2023

Before:  MOORE, THAPAR, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Serena R. Gray, Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge. Wendy Reinberg pled guilty to possession with intent to distribute methamphetamine and was sentenced to 60 months' imprisonment.  She claims that she was entitled to a shorter sentence under the safety-valve provision.  But to receive the benefit of that provision, she had to show by a preponderance of the evidence that she disclosed everything she knew about her crime and the surrounding circumstances.  The district court concluded that Reinberg failed to carry her burden.  We affirm.

I.

The government was investigating Reinberg's boyfriend, Matthew Kilbourne, for selling meth. During that investigation, an informant arranged to buy meth at Kilbourne's home. When the informant arrived, Kilbourne was nowhere to be found. But Reinberg and an unidentified man were there. So Reinberg offered to sell meth to the informant. The informant accepted and purchased 8.4 grams of meth from Reinberg, even though he was hoping to buy 10 grams.

While he was at the house, the informant asked Reinberg about purchasing a gun—specifically, a 410-gauge Taurus Judge revolver. At first, Reinberg didn't seem to know what the informant was talking about. But when the unidentified man asked if the informant meant the "gun he bought for [the informant]," Reinberg immediately caught on. Video at 9:10–9:14. She asked if the informant meant "[t]he Judge." Video at 9:15. He did, but Reinberg still wasn't sure about accepting the informant's $400 offer: "I don't know. She's pretty too." Video at 9:25–9:29.

A little more than a minute later, the informant reiterated his offer of $400, but Reinberg still hesitated: "I don't know, she's my—she's pretty, ain't it?" Video at 10:55–10:59. Finally, before the informant left, Reinberg told him she would "have [Kilbourne] hit you up on that." Video at 14:50–14:52.

Later, Kilbourne arranged to meet the informant. Kilbourne promised to bring the gun and more meth since the informant hadn't received as much from Reinberg as he had hoped. When the two met, Kilbourne didn't bring any meth, but he did sell the gun to the informant.

Kilbourne was arrested and charged with gun and drug offenses. For her part, Reinberg was indicted for possessing meth with intent to distribute, distributing meth, and aiding and abetting Kilbourne in the same. She pled guilty without a plea agreement.

Before sentencing, Reinberg met with the government to disclose what she knew. But her counsel stopped her from answering questions about the gun because she wasn't charged with any gun offenses. So when Reinberg asked for safety-valve relief at sentencing, the government opposed her request. Citing the video, the government argued that Reinberg hadn't

disclosed all she knew about the gun.  The district court granted a continuance to allow Reinberg to tell the government all she knew about the weapon.

When Reinberg met with the government a second time, she claimed "she was aware of the gun" but wasn't involved in its sale.  R. 79, Pg. ID 252.  She also said she never possessed the gun and didn't know where it was.  That led the government to oppose her safety-valve request once again, claiming that the video showed Reinberg knew more than she was saying. The district court agreed with the government, finding Reinberg's comments during the drug sale "dam[n]ing."  R. 79, Pg. ID 262.  The court concluded that it was "pretty clear that she had knowledge of the firearm," that "[s]he was familiar with it," and that there was "a pretty strong indication that the firearm was there" as the conversation "took place."  *Id.*  Thus, the district court denied safety-valve relief and sentenced Reinberg to 60 months' imprisonment.  She timely appealed.

## II.

The safety-valve provision allows a court to impose a sentence shorter than the statutory minimum if the defendant satisfies five conditions.  18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2.  The defendant bears the burden of proving by a preponderance of the evidence that she "meets each and every criterion."  *United States v. Barron*, 940 F.3d 903, 914 (6th Cir. 2019) (cleaned up).  The district court then makes a factual determination about each criterion, which we review for clear error.  *United States v. Gardner*, 32 F.4th 504, 526 (6th Cir. 2022).

Here, our review is limited to one criterion:  the defendant must tell the government "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f)(5).[1]  Indeed, the safety valve "imposes an affirmative obligation on the defendant" to disclose relevant information.  *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001).  That's because the safety valve applies "only [to] those defendants who truly cooperate."  *Id.* (cleaned up).

---

[1]The government argues that by possessing a gun Reinberg also failed to satisfy the safety valve's second criterion.  *See* 18 U.S.C. § 3553(f)(2).  But because Reinberg failed to satisfy the fifth criterion, we do not address the second.

So defendants must "produce evidence that demonstrates" complete and timely disclosure. *United States v. Adu*, 82 F.3d 119, 125 (6th Cir. 1996).

The district court concluded that Reinberg wasn't eligible for safety-valve relief. According to the court, the conversation indicated that the gun was present and Reinberg had withheld information.

The court's finding wasn't clearly erroneous. *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022) ("The deferential clear-error standard requires us to defer to the district court's finding about what transpired even if we would have made the opposite finding, so long as both stories are plausible on the record as a whole." (cleaned up)). In fact, the district court's interpretation of the video was the most plausible. First, Reinberg identified the gun by name, "the Judge." Video at 9:15. Indeed, she concedes that the "410" and the "Judge" refer to the gun that the informant eventually bought from Kilbourne. Appellant Br. 9. After she identified the gun, twice she remarked "it's pretty," suggesting she was familiar with its appearance. Video at 9:25–9:29, 10:55–10:59. Finally, Reinberg helped facilitate the later gun transaction, promising she would have Kilbourne "hit [the informant] up on that." Video at 14:50–14:52. So the district court's interpretation of the conversation was the most plausible: it was all about the gun.

At best, the video is partially ambiguous. The latter parts of the conversation could have been just about meth. But that would mean only that there are two plausible views of the conversation. And when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

Reinberg's counterarguments don't hold up. First, she analogizes her case to *United States v. Barron*, 940 F.3d 903 (6th Cir. 2019). But in that case, Barron's statements all along were consistent, and "no evidence" conflicted with them. *Id.* at 919. That meant the district court had no reason to deny Barron the safety valve. By contrast, the district court's conclusion here was well supported. Indeed, Reinberg's own words suggest that she knew more about the gun than she told the government. So *Barron* doesn't help Reinberg.

Reinberg also claims that instead of conducting its own analysis, the district court merely deferred to the government's conclusion that she hadn't provided complete and truthful information. But the sentencing transcript contradicts that claim. The district court independently concluded that Reinberg wasn't eligible for the safety valve. *See, e.g.*, R. 79, Pg. ID 262 ("[M]y finding is based on what I've heard from both parties, that the defense has not carried its burden. Factor Number 5 [for the safety valve] . . . [h]as not been satisfied.").

In sum, the court used the correct standard and came to the correct conclusion.

\*     \*     \*

The bottom line here is simple: no evidence, no safety valve. Defendants seeking the safety valve must show by a preponderance of the evidence that they're entitled to it. Reinberg hasn't done that, so we affirm.