NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0210n.06

Case No. 22-1492

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 04, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| STEVEN CHAVEZ PHILLIPS-HALL, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Steven Phillips-Hall pled guilty to firearms offenses. At sentencing, the district court imposed a four-level enhancement, finding that Phillips-Hall participated in a shooting three days before his arrest. Because that finding was not clearly erroneous, we affirm Phillips-Hall's sentence.

I.

Where was Steven Phillips-Hall at 11:56 p.m. on August 6, 2021? That's the question at the heart of this case, and the parties dispute the answer. But the following is all undisputed.

First, in March 2021, officers arrested Phillips-Hall and obtained a search warrant for his apartment. They found a loaded Glock Model 22 .40-caliber pistol, a loaded Smith & Wesson SD 9 VE 9mm pistol, and ammunition for both.

Second, in June 2021, Phillips-Hall was involved in a parking-lot shootout. Phillips-Hall and a group of suspected Bemis gang members (Phillips-Hall himself is known as "Bemis Steve") exchanged shots with suspected members of their rival gang, Highland. Stray bullets damaged property in the area, and a passer-by received a bullet wound to the head.

Third, on August 6 at 11:56 p.m., someone fired shots outside the Metro Bar, where Highland gang members were gathered. Four people were injured. After police arrived on the scene, a security guard told them that he had seen a man with a gun running away. He described the man as "an approximately 30-year-old black male, standing approximately 5'7" to 5'9" in height, with a 'skinny, muscular' build." R. 58-1, Pg. ID 333. He later added that he "thought that person's build was similar to Phillips-Hall but he did not know for sure." *Id.* at 336. A few days after the shooting, officers found ten shell casings across the street from the bar.

Fourth, just days after the Metro Bar shooting, officers arrested Phillips-Hall following a chase and a struggle. They found a stolen and loaded Sarsilmaz (SAR) CM9 9mm handgun in his bag. Further investigation revealed that the SAR had fired nine of the ten casings found at the scene of the Metro Bar shooting. The tenth came from a gun owned by another member of the Bemis gang, whom Phillips-Hall had called less than a week before that shooting.

Fifth, cell-phone records revealed that about a minute and a half after the Metro Bar shooting, Phillips-Hall received a call that used a cell tower that covered an area close to the Metro Bar. When confronted with this evidence, however, Phillips-Hall claimed he was at his sister's house all night, which was also within the same cell-tower coverage area. But his other cell-phone records show that his phone traveled all over the city that same evening.

Based on these facts, the government charged Phillips-Hall with knowingly possessing three guns as a felon: the Glock, the Smith & Wesson, and the SAR. He pled guilty to possession

of the Glock and the Smith & Wesson. The presentence report (PSR) recommended a four-level sentencing enhancement for possessing a firearm in connection with both the parking-lot and the Metro Bar shootings. *See* U.S.S.G. § 2K2.1(b)(6)(B). Phillips-Hall raised several objections, claiming that he shouldn't be held accountable for either shooting.

At sentencing, the district court agreed that Phillips-Hall's sentence shouldn't be enhanced for his participation in the parking-lot shooting because "[o]ne could make an argument" that he was acting in self-defense. R. 65, Pg. ID 382. But the court decided that sufficient evidence linked Phillips-Hall to the Metro Bar shooting. So the court applied the enhancement and sentenced Phillips-Hall to 115 months' imprisonment and 3 years' supervised release. Phillips-Hall now appeals his sentence, arguing the court didn't have enough evidence establishing his involvement in the Metro Bar shooting.

## II.

The Sentencing Guidelines authorize a four-level sentencing enhancement if the defendant "used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The government bears the burden of establishing facts supporting the enhancement by a preponderance of the evidence. *See United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019). Here, all agree that if Phillips-Hall was the person who fired the SAR pistol at the Metro Bar, this enhancement would apply. The district court concluded Phillips-Hall was that person, and we review that factual determination for clear error. *See United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011).

To succeed on clear-error review, Phillips-Hall must shoulder a heavy burden. *See United States v. Reinberg*, 62 F.4th 266, 268–69 (6th Cir. 2023). He must leave us with a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564,

573 (1985). Phillips-Hall hasn't done that. Consider the evidence supporting the enhancement. First, three days after the shooting, Phillips-Hall was caught carrying the gun that fired nine shots at the Metro Bar. And police later learned that Phillips-Hall knew the man whose gun fired the tenth shot. Second, Phillips-Hall had a likely motive: to harm the rival gang that tried to kill him and other Bemis gang members a few months prior. Third, Phillips-Hall lied to police about where he was during the evening of the shooting. Fourth, cell records confirmed Phillips-Hall could have been near the bar immediately after the shooting. Fifth, a security guard described a man who he thought matched Phillips-Hall's description running from the scene. Taken together, these facts provide ample support for the conclusion that Phillips-Hall was involved in the Metro Bar shooting.

Phillips-Hall presents three counterarguments, but none establishes clear error.

First, Phillips-Hall highlights two details of the security guard's description of the man fleeing the scene that don't match Phillips-Hall's description. For one, the guard described the man he saw running as being between 5'7" and 5'9", but Phillips-Hall is taller. For another, the security guard didn't mention that the man had a limp, but Phillips-Hall has one. Yet these small inconsistencies don't show clear error. Rather, we "defer to the district court's finding about what transpired" as long as that finding is "plausible on the record as a whole." *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022). And here, as outlined above, it was.

Second, Phillips-Hall argues that the cell-tower data from soon after the shooting support his story more than the government's. Specifically, he claims he couldn't have been at the Metro Bar at the time of the shooting because the cell tower's coverage area doesn't cover the bar itself—rather, it starts a few blocks away. But that doesn't undermine the district court's analysis either. After all, Phillips-Hall didn't receive a call until about 90 seconds after the shooting. And the

government presented evidence showing Phillips-Hall could have driven from the bar to the coverage area in less than 90 seconds.[1] So the government at least provided a plausible interpretation of the cell-tower data. And when faced with two plausible interpretations of the evidence, we defer to the district court's choice between them. *See Anderson*, 470 U.S. at 574.

Third, Phillips-Hall analogizes to another case, *United States v. Hatcher*, 947 F.3d 383 (6th Cir. 2020), in which investigators also used shell casings to tie the defendant to a shooting. But *Hatcher* addressed the doctrine of "unfair surprise," which doesn't apply here. *See id.* at 389–94. True, *Hatcher* went on to criticize the lack of evidence supporting the use of the shooting. But the *Hatcher* panel only addressed that issue to "provid[e] clarity on remand." *Id.* at 395. To the extent that discussion didn't contribute to the court's holding, it doesn't bind us. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019).

Regardless, *Hatcher*'s analysis is distinguishable. The sentencing court in *Hatcher* used shell casings to find that the defendant participated in the shooting—even though the government "did not even allege that [he] was involved." *Id.* at 395. Instead, the government claimed merely that the defendant's involvement "was a 'possibility.'" *Id.* What's more, the casings only came to the court through an agent's unsworn testimony. *Id.* No other evidence linked the defendant to the scene. *Id.* Here, by contrast, the government introduced various pieces of reliable evidence connecting Phillips-Hall and his gun to the Metro Bar shooting.

---

[1] Phillips-Hall also points out that the security guard described the suspect fleeing away from the cellular coverage area. But again, that doesn't make the district court's conclusion implausible. For example, the man the guard saw might've been the second shooter. And even if the guard truly witnessed Phillips-Hall, he might've simply run around the corner, gotten in a car, and driven back the other way. Absent evidence foreclosing these alternative and plausible theories, Phillips-Hall fails to show clear error. *Estrada-Gonzalez*, 32 F.4th at 614.

\*          \*          \*

Because Phillips-Hall hasn't shown that it was clearly erroneous for the district court to conclude that he committed the Metro Bar shooting, we affirm.