NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0339n.06

No. 22-5559

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 24, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
|  | ) | |
| LARRY EVERETT SMITH, | ) | |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |
|  | ) | |

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

For his role in a sprawling telemedicine scam, defendant Larry Smith pleaded guilty to conspiring to commit healthcare fraud. The district court sentenced him to 42 months' imprisonment, which he now appeals. Because his sentence is both procedurally and substantively reasonable, we affirm.

I.

Along with over a dozen co-defendants, Smith participated in a nationwide conspiracy in which marketers identified individuals with private health insurance and sent them prescriptions they did not request, written by doctors with whom they had no prior relationship. The conspirators profited by submitting insurance claims on the patients' behalf for the medicine at a high mark-up while concealing that no co-pays were collected.

Smith managed several pharmacies that profited via this scheme. He pleaded guilty to one count of conspiracy to commit healthcare fraud in violation of 18 U.S.C. §§ 1347, 1349, pursuant to a plea agreement. Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommended that the district court use a base offense level of six, but because Smith had caused over $24 million in losses (a twenty-level enhancement, U.S.S.G. § 2B1.1(b)(1)(K)) and the offense involved sophisticated means (a two-level enhancement, U.S.S.G. § 2B1.1(b)(10)), they anticipated a total offense level of 28. The government agreed that it would not oppose a two- or three-level reduction for Smith's acceptance of responsibility under U.S.S.G. § 3E1.1, and it "agree[d] not to seek the application of any other enhancements to [Smith]'s sentence." Smith waived much of his right to file a direct appeal of his conviction or sentence, reserving only the right to "appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater."

The presentence investigation report determined that Smith's total offense level was 33 and his criminal history category was I, resulting in a Guidelines range of 135 to 168 months' imprisonment. The statutory maximum, however, capped the range at 120 months. That calculation applied several enhancements upon which the parties did not agree, including two levels for the use of mass marketing and the number of victims (U.S.S.G. § 2B1.1(b)(2)(A)), two levels for the amount of government loss (U.S.S.G. § 2B1.1(b)(7)), and four levels for Smith's leadership role (U.S.S.G. § 3B1.1(a)).

Smith objected to each of those enhancements. The district court sustained all his objections, which returned him to the parties' agreed-upon total offense level of 28. After the three-level reduction for acceptance of responsibility, his total offense level became 25, with a corresponding Guidelines range of 57 to 71 months' imprisonment.

The government moved for a seven-level downward departure. The district court granted the motion in part, departing six levels down, which resulted in a total offense level of 19 and a corresponding Guidelines range of 30 to 37 months' imprisonment. After reviewing the applicable 18 U.S.C. § 3553(a) factors at length and considering Smith's motion for a downward departure and variance, the district court imposed a 42-month sentence. Smith timely appealed.

II.

We must begin with the government's contention that Smith cannot bring this appeal, given the appeal waiver in his plea agreement. "It is well settled that a defendant 'may waive any right, even a constitutional right, by means of a plea agreement,'" so long as that agreement is made knowingly and voluntarily. *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (quoting *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)). When, as here, a defendant does not challenge the validity of the appeal waiver, we review de novo whether the claims presented on appeal fall within the scope of the waiver. *Id.* at 378.

It is unsettled whether granting a downward-departure motion results in a below-Guidelines sentence or creates a new Guidelines range. *Compare United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam) (explaining that a "'departure' refers to the imposition of a sentence outside the [Guidelines] range") *with, e.g.*, *United States v. Gould*, 30 F.4th 538, 542 (6th Cir. 2022) (referring to the "resulting Guidelines range" after a downward departure). That is an issue to resolve in another case. For this appeal, we assume that the applicable Guidelines range was the post-downward-departure range of 30 to 37 months, placing Smith's 42-month sentence outside the scope of his appeal waiver. *See United States v. Fowler*, 956 F.3d 431, 436 (6th Cir. 2020) (holding that ambiguity in a plea agreement must be construed against the government). Indeed, it appears that at sentencing, the government understood it to be

so when it requested "a sentence within the Guideline range the court has now determined," referring to this range. But for the reasons set forth below, Smith's procedural and substantive challenges to his sentence are without merit.

III.

A.

Before we reach the merits, we address Smith's claim that his plea agreement prohibits the government from presenting *any* argument to us. He contends that the government's promise "not to seek the application of any . . . enhancements" is ambiguous and should be read to require the government to "stand mute" on appeal. On de novo review, *United States v. Estrada-Gonzalez*, 32 F.4th 607, 612 (6th Cir. 2022), we disagree.

To interpret language in a plea agreement, we consider how a "reasonable person" would understand it. *Id.* (citation omitted). Here, the language is clear. The government may not seek application of any Guideline "enhancement" beyond those already contemplated by the parties (i.e., those in § 2B1.1). Enhancement has a specific meaning: a sentencing adjustment based on Chapter Two of the Sentencing Guidelines. *See* U.S.S.G. § 1B1.1 comment. n.4(B). The parties' narrow agreement thus prohibits the government from, say, advocating on appeal for the application of *another* subsection of § 2B1.1 to enhance Smith's sentence. But this is not a case in which the government agreed not to "suggest an upward variance in any way." *Estrada-Gonzalez*, 32 F.4th at 612. On appeal, the government does not seek application of any specific enhancements, so its argument defending the sentence imposed does not run afoul of the plea agreement.

B.

Procedural reasonableness requires the district court to "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). We usually review a challenge to the procedural reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). But here, Smith objected generally to the procedural reasonableness of his sentence without citing any specific errors in the district court's analysis, so we review only for plain error. *See United States v. Simmons*, 587 F.3d 348, 357–58 (6th Cir. 2009); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). This requires Smith to show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

Smith's briefing, while not a model of clarity, appears to raise three procedural-reasonableness claims: that the district court relied on improper facts, relied on improper factors, and failed to address all his arguments for a lesser sentence. We address each in turn.

Smith challenges three facts relied on by the district court as clearly erroneous. First, he complains that the court wrongly assumed that people fell victim to the scam because they were looking for "some new cure for their pain." But this statement was supported by the presentence report, which the court was entitled to rely on at sentencing. Fed. R. Crim. P. 32(i)(3)(A); *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007). The presentence report outlined various deceptive and misleading advertisements used to "misinform[] patients that the [fraudulent

medications] were effective at treating various ailments." It was entirely reasonable for the district court to surmise that some victims of Smith's scheme fell prey to the scheme as a result of these advertisements because they were seeking a cure for their ailments. *See United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019) ("[T]he district court is free to make reasonable inferences from facts in the record when fashioning a sentence.").

Next, Smith objects to the district court's assumption that he did not provide reasonable responses to complaints from victims. True, the court suspected that customers did not "get a reasonable response" from Smith to their complaints, but it admitted that it did not actually "know what kind of response the customers who called in with complaints got." Given this limitation, we see no error.

He also takes issue with the district court's conclusion that the victims were given "false hope" by the scheme. But again, this statement was supported by Smith's own admissions, as memorialized in his plea agreement, that he obtained vitamins and "repackaged [them] as prescription drugs." It was reasonable for the district court to assume that vitamins would not have the same clinical effects as real prescription drugs, misleading the duped consumers into a false sense of hope. *See Parrish*, 915 F.3d at 1048.

Smith's next claim of error alleges that the district court considered impermissible factors when it sustained his objections to the mass-marketing and leadership enhancements but varied upward on the same facts. The district court did so because it believed that the unenhanced Guideline range did not account for these aspects of Smith's conduct. Smith acknowledges that there is no "bright-line rule" that district courts cannot rely on factors that the Guidelines already accounted for when imposing a variance. *United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.1 (6th Cir. 2010). And courts may certainly vary upward based on conduct that is *not* adequately

"reflected in the guideline calculation." *See United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011) (affirming an upward variance based on the district court's judgment that the seriousness of the offense was not sufficiently reflected in the Guidelines calculation). Here, the Guidelines did not account for either Smith's leadership role or the use of mass marketing, given that the district court sustained Smith's objections to those enhancements. Because the district court explained why it felt that the Guidelines range was insufficient to satisfy the § 3553(a) factors when considering these two aspects of Smith's conduct, we find no plain error in the court's consideration of this conduct when justifying the five-month upward variance.

Finally, Smith argues that the district court did not "adequately consider each of his nonfrivolous grounds to depart or vary downward." But he does not identify which arguments the district court neglected. We see no error, particularly given that the district court must "consider" each argument at sentencing but need not "address each argument head-on." *United States v. Taylor*, 696 F.3d 628, 634 (6th Cir. 2012) (internal quotation marks omitted). The district court stated it had read everything, including Smith's sentencing memorandum and the documents he submitted in support, and the court engaged with each of Smith's arguments at the sentencing hearing. Moreover, the court discussed several of Smith's specific arguments for leniency, including his personal history, character, charitable works, medical conditions, and family responsibilities—ultimately concluding that his "good works and family standing" were mitigating factors. The court did not plainly err.

C.

Smith also contends that his sentence is substantively unreasonable—that is, it is "too long" given his circumstances. *Rayyan*, 885 F.3d at 442. A claim of substantive reasonableness is "that

the court placed too much weight on some of the § 3553(a) factors and too little on others[.]" *Id.* We review a claim of substantive reasonableness for an abuse of discretion. *Id.*

First, Smith argues that he acted less culpably than his co-defendants, but that distinction was not reflected in his sentence. The record belies this claim. The district court acknowledged both the differences and the similarities between Smith's conduct and that of his co-defendants. For example, the court noted that all co-defendants operated under one fraudulent scheme, but that Smith was "in charge of all of" the responsibilities for his spoke of the conspiracy's wheel, rather than playing a more compartmentalized role like some co-defendants, and that he distributed non-prescription vitamins intentionally mislabeled as prescription medicine (something the other spoke of the wheel did not participate in). The district court reasonably considered these distinctions when imposing Smith's sentence; that it did not do so in precisely the way Smith prefers does not render the sentence imposed unreasonable.

Relatedly, Smith complains that he received the second-highest sentence of all the defendants in this conspiracy. This does not render his sentence unreasonable, because § 3553(a)(6) is concerned not with disparities between co-defendants, but "*national* disparities between defendants with similar criminal histories convicted of similar criminal conduct." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Nor was the district court required to follow the national trends and statistics Smith cited, for "the Guidelines, not statistical reports, are our barometer for promoting nationwide sentencing uniformity." *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021) (internal quotation marks omitted).

Finally, Smith argues that the district court did not give him sufficient credit for accepting responsibility and for substantially assisting the government. This is plainly not borne out by the record. Smith received a three-level reduction for accepting responsibility and a six-level

downward departure for substantial assistance. To the extent that Smith challenges the district court's decision to grant only a six-, rather than a seven-level, downward departure, we lack jurisdiction to review that argument. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

In sum, the district court considered the relevant factors and crafted a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). We will not deem Smith's sentence unreasonable just because he thinks the district court should have balanced the § 3553(a) factors differently. *See United States v. Adkins*, 729 F.3d 559, 572 (6th Cir. 2013).

IV.

For these reasons, we affirm the sentence imposed by the district court.