NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0430n.06

Case No. 25-5193

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>     Plaintiff-Appellee,<br><br>v.<br><br>BENNIE C. DAVIS,<br><br>     Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY<br><br>OPINION</td></tr>
</table>

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

READLER, Circuit Judge. The district court revoked Bennie Davis's supervised release after finding that he possessed a firearm. As that finding was not clearly erroneous, we affirm.

I.

Faced with federal criminal charges for setting fire to a Qdoba restaurant, Davis pleaded guilty to committing arson, *see* 18 U.S.C. § 844(i), served his five-year sentence, and started a three-year term of supervised release. Since then, he has repeatedly violated his conditions of release.

At one of Davis's revocation hearings, his ex-girlfriend testified to allegations she made relating to a state assault charge committed by Davis. During her testimony, she said something that caught the prosecutor's and district court's attention: Davis "grabbed . . . [h]is backpack and his firearm . . . out of my car." Tr. Revocation Hr'g, R. 123, PageID 489. Further testimony

revealed that the firearm was a "semiautomatic" "[b]lack and gray" "pistol," Davis's "daily weapon" that he "carrie[d] . . . with him all the time." *Id.* at PageID 494–95. Questioning by the district court confirmed that Davis carried the gun "often" throughout the eight months the witness knew him. *Id.* at PageID 497.

As a standard condition of release, Davis was prohibited from possessing a firearm. *See* U.S. Sent'g Guidelines Manual § 5D1.3(c)(10) (U.S. Sent'g Comm'n 2024). Based on the testimony from his revocation hearing, the government charged Davis with an additional violation: possessing a firearm while on supervised release. The district court, finding sufficient "circumstantial evidence [that] would indicate" Davis possessed "an operable firearm," revoked his supervised release once again and imposed a new sentence. Tr. Supervised Release Violation, R. 120, PageID 438, 447. Davis now appeals.

## II.

A district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of [that] release." 18 U.S.C. § 3583(e)(3); *United States v. Adams*, 723 F.3d 687, 689 (6th Cir. 2013). In an appeal from the revocation of supervised release, we defer to the district court's factual findings unless they are clearly erroneous. *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009). On that score, if a finding is at least "plausible on the record as a whole," *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022), or one "permissible view[] of the evidence," *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985), it is not clearly erroneous.

The district court did not clearly err in finding that Davis possessed a firearm. In reaching that conclusion, the district court deemed credible the testimony from Davis's ex-girlfriend, including her statement that she "observe[d] Mr. Davis carrying a firearm, what she described as

2

his daily firearm." Tr. Supervised Release Violation, R. 120, PageID 438. "Findings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (citation modified). And in any event, Davis offered no reason to disbelieve his ex-girlfriend. All said, the district court did not clearly err in concluding she had seen Davis carrying a gun on a daily basis.

Davis challenges the district court's finding in just one respect. As background, recall that Davis's condition of supervised release barred him from possessing a "firearm." J. Crim. Case, R. 85, PageID 261; *see* U.S. Sent'g Guidelines Manual § 5D1.3(c)(10) (U.S. Sent'g Comm'n 2024) (prohibiting defendant from "own[ing], possess[ing], or hav[ing] access to a firearm"). To Davis's mind, the district court clearly erred in finding that "the gun" (or firearm) he possessed "was real." Appellant Br. 16. We see no basis for concluding that the district court clearly erred in finding that the gun Davis's ex-girlfriend saw was real. Again, the ex-girlfriend testified that she saw Davis carrying the weapon on a "daily" basis and described the weapon in detail. Tr. Revocation Hr'g, R. 123, PageID 494. Was that item merely a highly accurate replica or toy pistol, as Davis seems to imply? The district court disagreed, sensibly finding that Davis "would not have been carrying [the firearm] routinely" if it was inoperable. Tr. Supervised Release Violation, R. 120, PageID 438; *cf. United States v. Travis*, No. 24-5028, 2024 U.S. App. LEXIS 10515, at *6 (6th Cir. Apr. 30, 2024) (mem.) ("[T]he district court . . . did not believe that Travis would carry around a toy gun, finding that such a notion did not make sense."). Rejecting Davis's strained possibility, as the district court did, was a "permissible" way to "view[] . . . the evidence." *Anderson*, 470 U.S. at 574.

Invoking case law, Davis highlights a series of factors we have previously found helpful in confirming the presence of a "real" firearm, from the testing, handling, or shooting of the firearm

in question to its use in threatening behavior to pictorial or video evidence of what it looked like, none of which, he says, are present here. *See, e.g.*, *United States v. Jackson*, No. 22-5905, 2023 WL 10978181, at \*1–2 (6th Cir. Oct. 12, 2023) (mem.) (handling, testing, and shooting); *Travis*, 2024 U.S. App. LEXIS 10515, at \*6 (threats); *United States v. Curtis*, No. 24-1095, 2025 WL 448945, at \*7 (6th Cir. Feb. 10, 2025) (pictures and video, matched with ballistics testing). Perhaps so. Yet that these features were sufficient to show there was a real gun in those cases, on those specific records, does not mean they are needed to do so here. The district court was required to make that determination from the unique record compiled in Davis's case. And it did so, finding that Davis carried a real black and gray, semiautomatic pistol with him "all the time." Tr. Revocation Hr'g, R. 123, PageID 494–95.

\*     \*     \*     \*     \*

We affirm.

4